UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-62028-CIV-LENARD/GOODMAN

**CLINGMAN & HANGER
MANAGEMENT ASSOCIATES, LLC,**
**as trustee,**

    Plaintiff,

**v.**

**DAVID KNOBEL, et al.,**

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (D.E. 21, 33)

**THIS CAUSE** is before the Court on Defendants Dean Bartness, David Knobel, Jeffrey Pierne, Siana Steward, and Cid Yousefi's Motion to Dismiss (D.E. 20) and Memorandum of Law in Support thereof, ("Motion," D.E. 21), filed October 21, 2016. Also before the Court is Defendant Neal Yawn's Motion to Dismiss. (D.E. 33.) Plaintiff Clingman & Hanger Management Associates, LLC, as Trustee of a liquidating trust established by the Chapter 11 plan of FCC Holdings, Inc. and its debtor subsidiaries, filed a single Response on December 16, 2017, ("Response," D.E. 37), to which Defendants filed a Joint Reply on January 6, 2017, ("Reply," D.E. 45). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

**I.     Background**[1]

Prior to its collapse in 2014, FCC Holdings, Inc. ("FCC") owned and operated forty-one for-profit, post-secondary education schools—fourteen Florida Career College schools, twenty-two Anthem Education schools, and five schools in California. (Compl. ¶¶ 2, 7, 20.) Pursuant to Title IV of the Higher Education Act of 1965, the U.S. Department of Education ("DOE") provided tuition funding for students attending the FCC schools that were eligible to receive Title IV funds.[2] (Id. ¶ 2.) Approximately 90% of FCC's revenue and cash consisted of Title IV funds paid to FCC to satisfy student tuition obligations. (Id. ¶ 2.)

Instead of limiting its Title IV fund "draws" based on FCC's then-current enrollment data or treating Title IV funds as trust funds, as required by DOE regulations, Defendants took advantage of the ability to draw Title IV funds before having to substantiate them with the DOE (by identifying specific students to whom the funds were disbursed) by drawing tens of millions of dollars to pay FCC's operating costs and capital expenditures. (Id. ¶ 3.) The Complaint alleges that Defendants knew, or should have known, that this conduct violated DOE regulations.[3] (Id. ¶ 5.)

---

[1] The following facts are gleaned from Plaintiff's Complaint (D.E. 1) and are deemed to be true for purposes of ruling on Defendants' Motions.

[2] All of the FCC schools except the five California schools were Title IV-eligible. (Compl. ¶ 20.)

[3] Defendant Neal Yawn was FCC's Chief Operations Officer, (Compl. ¶ 6(a)); Defendant Siana Stewart was FCC's Vice President of Financial Services, (id. ¶ 6(b)); Defendant David Knobel was FCC's Chief Executive Officer and director of FCC, (id. ¶ 6(c)); Defendant Jeffrey Pierne was FCC's Chief Financial Officer, (id.); Defendant Cid Yousefi was FCC's Senior Vice President of Information Technology who, upon Stewart's resignation in December 2013, assumed Stewart's responsibilities and supervised FCC's Financial Services Office, (id. ¶

In May 2013, DOE temporarily suspended FCC's ability to draw Title IV funds without first substantiating its entitlement thereto after FCC drew but did not properly substantiate or refund over $15 million in Title IV funds. (Id. ¶ 7.) After substantiating or refunding the $15 million, management re-engaged in violating DOE regulations with the same conduct/inaction as it had the prior year (in additional to other conduct). (Id.) By March 2014, after FCC had drawn approximately $20 million in unsubstantiated Title IV funds, DOE demanded that FCC repay or substantiate all unsubstantiated funds within thirty days, and permanently eliminated FCC's ability to draw Title IV funds without first substantiating its entitlement thereto. (Id.)

Immediately upon learning of Defendants' misconduct in April 2014, FCC's Board of Directors removed Knobel as director and CEO, and Yawn resigned. (Id. ¶ 8.) However, by then the company's liquidation was inevitable and, by August 2014, the company sold off its most valuable schools and filed for bankruptcy protection. (Id.)

On March 18, 2015, the United States Bankruptcy Court for the District of Delaware confirmed the Plan in FCC's Chapter 11 Bankruptcy Case, established a trust and appointed Plaintiff as Trustee. (Id. ¶ 11.) On August 23, 2016, Plaintiff filed the instant Complaint on behalf of FCC's creditors—including lenders, trade vendors, and the DOE, (id. ¶ 107)—alleging a single cause of action for breach of fiduciary duty. (Id. ¶¶ 96-109.) Defendants move to dismiss the Complaint primarily for failure to state a claim. (D.E. 21 at 8; D.E. 33 at 2.)

---

17); and Defendant Dean Bartness was FCC's Chief Compliance Officer and the person responsible for ensuring compliance with DOE regulations, (id. ¶ 6(e)).

## II. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship among the Parties and the amount in controversy exceeds $75,000.00.  (See id. ¶¶ 11-18.)  The Court also has jurisdiction under 28 U.S.C. § 1334, which provides that district courts have original jurisdiction over civil proceedings related to bankruptcy cases brought under Title 11 of the United States Code.

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555 (citation omitted).  Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference."  Aldana v. Del

> Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., __ U.S. __, 132 S. Ct. 1702, 1706 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

## IV. Choice of Law

The Parties agree that Delaware law controls the substantive issues in this case. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). "The fiduciary duties owed to a corporation by its officers and directors concern the internal affairs of a corporation." Mukamal v. Bakes, 378 F. App'x 890, 896 (11th Cir. 2010) (citation omitted). "The Florida Business Corporation Act provides that the internal affairs of a corporation are governed by the laws of the state of incorporation." Id. (citing Fla. Stat. § 607.1505(3)). Because FCC was incorporated in Delaware, the Court will apply Delaware law to the substantive issues raised herein. See id. (applying Delaware law to breach of fiduciary

duty claims pursuant to the Florida Business Corporation Act's "internal affairs" provision).

## V. Discussion

Defendants argue that the Complaint should be dismissed for the following reasons: (1) Plaintiff has failed to plead around the "Business Judgment Rule," (Mot. at 4); (2) Knobel and Pierne's actions are protected by FCC's exculpation clause, (id. at 19); (3) Stewart and Yousefi were not fiduciaries, (id. at 19); (4) Plaintiff's claim is barred by the statute of limitations, (id. at 21); and (5) Plaintiff lacks standing, (id. at 22). Defendant Yawn's separate Motion further argues that the Complaint fails to allege scienter with particularity, or that he consciously disregarded his duties or knowingly broke the law. (D.E. 33 at 2-3.)

Because standing presents a "threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims[,]" Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005), the Court will begin by addressing the Parties' arguments on that issue.

Defendants argue that Plaintiff lacks standing to allege breach of fiduciary duty on behalf of FCC's prepetition creditors. (Mot. at 22 (citing Mukamal, 378 F. App'x at 899).) Plaintiff argues that it has standing to bring a direct claim for breach of fiduciary duty on behalf of FCC. (Resp. at 4 (citing Mukamal, 378 F. App'x at 899).)

Mukamal involved the bankruptcy of Far & Wide Enterprises, a Delaware corporation formed in 1999 to purchase travel companies ("the debtors"), consolidate them, and sell the resulting conglomerate for a profit. 378 F. App'x at 892-93.

6

Wellspring Capital Management, LLC invested $45 million in the debtors, acquired a majority of their stock, and appointed four of the six members on Far & Wide's board of directors. Id. 892-93. Far & Wide and the debtors obtained millions of dollars in financing, including a $70 million loan from a group of banks. Id. at 893. However, after the September 11, 2001 terrorist attacks and the subsequent outbreak of the SARS virus in Asia, the travel market struggled and Far & Wide defaulted on the $70 million loan. Id. Nevertheless, Wellspring represented to the banks that a single purchaser could still be found to purchase the conglomerate and, based on that representation, the banks decided not to foreclose and instead entered into a forbearance agreement. Id. The debtors attempted to reorganize, taking out more loans (including a $10 million loan from Wellspring at a minimum 14.75% interest rate), but ultimately filed for bankruptcy. Id. at 893-94.

The United States Bankruptcy Court for the Southern District of Florida confirmed a liquidating plan of reorganization and appointed the plaintiff as trustee of two trusts created to pursue claims on behalf of (1) the debtors and (2) the debtors' creditors who had voted to accept the liquidation plan. Id. at 892. The trustee-plaintiff sued Wellspring on behalf of each trust for breach of fiduciary duty. Id. at 895. The district court dismissed the breach of fiduciary duty claim brought on behalf of the debtors' creditors, and the trustee appealed. Id. at 897. The Eleventh Circuit affirmed on the grounds that Delaware law does not recognize direct claims for breach of fiduciary duty by the debtors' creditors. Id. at 897-98. "Because directors and officers do not owe a fiduciary duty to creditors, even after insolvency, the district court correctly dismissed the Debtors'

7

creditors' direct claims for breach of fiduciary duty." Id. at 898 (relying on N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 99 (2007)). However, dismissal was not based on lack of standing but rather for failure to state a claim. See Id. at 897 (recognizing that the district court had dismissed the creditors' direct claims for breach of fiduciary duty for failure to state a claim); see also Gheewalla, 930 A.2d at 101 (affirming the district court's dismissal of creditor's direct claim for breach of fiduciary duty for failure to state a claim).

Plaintiff, however, cites a later part of the Mukamal decision that recognizes that a trustee "does have standing to bring direct claims for breach of fiduciary duty on behalf of the Debtors." 378 F. App'x at 899 (emphasis added). However, that legal principle is irrelevant here because Plaintiff is not bringing the breach of fiduciary duty claim on behalf of the debtor (FCC) but rather on behalf of FCC's creditors. The Complaint explicitly states that "the Trustee, as Plan fiduciary for FCC's creditors, which include FCC's lenders, trade creditors, and the DOE, seeks damages from the defendants on account of their breaches of fiduciary duty and their destruction of approximately $150 million in value, to the detriment of the Debtor's prepetition creditors." (Id. ¶ 10 (emphases added); see also id. ¶ 107 ("As a result of defendants' fiduciary duty breaches, FCC's creditors, on whose behalf the Trustee commenced this action (including lenders, trade vendors, and the DOE), have been damaged in an amount to be determined after trial, but not less than $150 million.").)

Because Delaware law does not recognize a direct claim by a corporation's creditor against the corporation's directors for breach of fiduciary duties, the Complaint

must be dismissed for failure to state a claim. Mukamal, 378 F. App'x at 898; Gheewalla, 930 A.2d at 99-101; see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 389 (5th Cir. 2009).

**VI.    Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.** Defendants David Knobel, Jeffrey Pierne, Dean Bartness, Siana Stewart, and Cid Yousefi's Motion to Dismiss Complaint (D.E. 20) is **GRANTED**;

**2.** Defendant Neal Yawn's Motion to Dismiss Complaint (D.E. 33) is **GRANTED**;

**3.** The Complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted;

**4.** All pending motions are **DENIED AS MOOT**; and

**5.** This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of April, 2017.

                                                              **JOAN A. LENARD**
                                                              **UNITED STATES DISTRICT JUDGE**