# EXHIBIT A

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:21 PM 11/12/2004
FILED 12:13 PM 11/12/2004
SRV 040817042 - 3872496 FILE

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

## FCC HOLDINGS, INC.

FCC Holdings, Inc., a corporation organized and existing under the General Corporation Law of the State of Delaware (the "Corporation"), DOES HEREBY CERTIFY:

FIRST: The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of Delaware on October 26, 2004 under the name "FCC Holdings, Inc."

SECOND: The Amended and Restated Certificate of Incorporation of the Corporation in the form attached hereto as Exhibit A has been duly adopted in accordance with the provisions of Sections 245 and 242 of the General Corporation Law of the State of Delaware by the directors and stockholders of the Corporation.

THIRD: The Amended and Restated Certificate of Incorporation so adopted reads in full as set forth in Exhibit A attached hereto and is hereby incorporated herein by this reference.

IN WITNESS WHEREOF, the Corporation has caused this Certificate to be signed by its President this 12th day of November, 2004.

FCC HOLDINGS, INC.

By: /s/ Jeffrey S. Barber

Jeffrey S. Barber, President

**EXHIBIT A**

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

## OF

## FCC HOLDINGS, INC.

### ARTICLE I

The name of the corporation is FCC Holdings, Inc. (the "Corporation").

### ARTICLE II

The address of the Corporation's registered office in the State of Delaware is 1209 Orange Street in the City of Wilmington, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

### ARTICLE III

The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

### ARTICLE IV

The total number of shares of capital stock which the Corporation shall have authority to issue is 20,000,000, of which (i) 8,100,000 shares shall be preferred stock, par value $0.001 per share (the "Preferred Stock"), and (ii) 11,900,000 shares shall be common stock, par value $0.001 per share (the "Common Stock").

The voting powers, designations, preferences, powers and relative, participating, optional or other special rights, and the qualifications, limitations or restrictions of each class of capital stock of the Corporation, shall be as provided in this Article IV.

LIBC:1990508.7

A.  SERIES A CONVERTIBLE PREFERRED STOCK

1.  Designation. A total of 8,100,000 shares of the Corporation's Preferred Stock shall be designated as a series known as Series A Preferred Stock, par value $0.001 per share (the "Series A Preferred Stock").

2.  Voting. Each outstanding share of Series A Preferred Stock shall be entitled to a number of votes equal to the number of shares of Common Stock into which such share of Series A Preferred Stock is then convertible pursuant to Section A.6 hereof as of the record date for the vote or written consent of shareholders, if applicable. Each holder of outstanding shares of Series A Preferred Stock shall be entitled to notice of any shareholders' meeting in accordance with the by-laws of the Corporation and shall vote with holders of the Common Stock, voting together as single class, upon all matters submitted to a vote of shareholders, excluding those matters required to be submitted to a class or series vote pursuant to the terms hereof (including, without limitation, Section A.8) or by law.

3.  Dividends. The holders of shares of Series A Preferred Stock shall be entitled to receive, out of funds legally available therefor, dividends (other than a dividend constituting a liquidating distribution) at such times and in such amounts as are received by holders of outstanding shares of Common Stock, pro rata based on the number of shares of Common Stock held by each, determined on an as-if-converted basis (assuming full conversion of all such shares of Series A Preferred Stock). Such dividends shall not be cumulative. The holders of shares of Series A Preferred Stock shall otherwise not be entitled to receive dividends.

4.  Liquidation Preferences.

(a)  Liquidation Events. Upon any liquidation, dissolution or winding up of the Corporation and its subsidiaries, whether voluntary or involuntary (a "Liquidation Event"):

(i)  Series A Preference Amount. Each holder of outstanding shares of Series A Preferred Stock shall be entitled to be paid in cash, before any amount shall be paid or distributed to the holders of the Common Stock or any other capital stock ranking on liquidation junior to the Series A Preferred Stock, an amount per share of Series A Preferred Stock equal to (A) $3.703704 (the "Original Issue Price"), plus (B) any declared but unpaid dividends on such share of Series A Preferred Stock. Such amount specified in the immediately preceding sentence of this Section A.4(a)(i) is referred to herein as the "Series A Preference Amount" and it shall be adjusted appropriately for stock splits, stock dividends, combinations, recapitalizations and the like and as otherwise set forth in Section A.4(c) below. The Common Stock and other capital stock ranking on liquidation junior to the Series A Preferred Stock are referred to herein collectively as "Junior Stock." If the amounts available for distribution by the Corporation to holders of Series A Preferred Stock upon a Liquidation Event are not sufficient to pay the aggregate Series A Preference Amount due to such holders, such holders of Series A Preferred Stock shall share ratably in any distribution in connection with such Liquidation Event in proportion to the full respective preferential amounts to which they are entitled.

2

(ii) <u>Remaining Assets</u>. After the prior payment in full of the Series A Preference Amount in connection with a Liquidation Event, the remaining assets and funds of the Corporation available for distribution to its shareholders, if any, shall be distributed among the holders of shares of Junior Stock then outstanding, pro rata, on an as-converted basis (based on the number of shares of Common Stock into which such Junior Stock was convertible as of immediately prior to such Liquidation Event).

(b) <u>Mergers, Asset Sales and Other Changes of Control</u>. As holders of the senior securities in the Corporation's capital structure, each holder of outstanding shares of Series A Preferred Stock shall be entitled to receive, before any amount shall be paid or distributed to the holders of Junior Stock, an amount per share in cash equal to the Series A Preference Amount in the event of any merger, asset sale or other change of control, in all cases in exactly the same manner as if such transaction were a Liquidation Event, if so elected by the holders of not less than a majority of the voting power of the outstanding shares of Series A Preferred Stock (a "Majority Interest"). The transactions in which the holders of the Series A Preferred Stock shall be entitled to receive such preference include (i) any merger or consolidation of the Corporation with or into another corporation in which less than a majority of the outstanding voting power of the surviving or consolidated corporation immediately following such event is held by persons or entities who were shareholders of the Corporation immediately prior to such event; (ii) any sale, license or transfer of all or substantially all of the properties and assets of the Corporation or its subsidiaries; (iii) any acquisition by any person (or group of affiliated or associated persons) of beneficial ownership of a majority of the equity of the Corporation or any material subsidiary (whether or not newly-issued shares) in a single transaction or a series of related transactions; (iv) any redemption or repurchase of shares representing a majority of the outstanding voting power of the Corporation; and (v) any other change of control of 50% or more of the outstanding voting power of the Corporation (each, a "Liquidity Event").

If an election to participate in a Liquidity Event is made by a Majority Interest, the Series A Preference Amount shall be paid by the purchaser to the holders of the Series A Preferred Stock in preference to any Junior Stock. If the Corporation receives consideration in connection with any such Liquidity Event and the Corporation does not otherwise dissolve or liquidate within 60 days after such Liquidity Event, then the Corporation will deliver a written notice to each holder of Series A Preferred Stock no later than the 60th day after the Liquidity Event advising them of their right to require the redemption of their shares of Series A Preferred Stock. In such event, the holders of a Majority Interest may require the Corporation to use all assets of the Corporation (net of any retained liabilities associated with the assets sold) (the "Net Proceeds") to redeem, not later than on the 90th day after such Liquidity Event, all outstanding shares of Series A Preferred Stock at a price per share equal to the Series A Preference Amount. Prior to the distribution or redemption provided for in this paragraph, the Corporation shall not expend or dissipate the consideration received in such Liquidity Event, except to discharge any or all liabilities.

The preferences and priorities set forth in Section A.4(a) and relating to the Series A Preference Amount are specifically intended to be applicable in any Liquidity Event. In furtherance of the foregoing, the Corporation shall take such actions as are necessary to give

3

effect to the provisions of this Section A.4(b), including, without limitation, in the case of a merger or consolidation causing the definitive agreement relating to such merger or consolidation to provide for a rate at which the shares of Series A Preferred Stock are converted into or exchanged for consideration which gives effect to such preferences and priorities. The Corporation shall promptly provide to the holders of shares of Series A Preferred Stock such information concerning the terms of any Liquidity Event, and the value of the assets of the Corporation, as may reasonably be requested by the holders of Series A Preferred Stock. The Corporation shall not have the power to effect any transaction constituting a Liquidity Event unless the relevant transaction agreement reflects the preferential rights of the Series A Preferred Stock described herein.

Any election by a Majority Interest pursuant to this Section A.4(b) shall be made by written notice to the Corporation and the other holders of Series A Preferred Stock at least five (5) days prior to the closing of the relevant transaction. Upon the election of such Majority Interest hereunder, all holders of Series A Preferred Stock shall be deemed to have made such election and such election shall bind all holders of the Series A Preferred Stock. Notwithstanding anything to the contrary contained herein, in connection with any Liquidity Event, the holders of a Majority Interest shall have the right to elect to give effect to the conversion rights contained in Section A.6(a) below or the rights contained in Section A.7(c) below, if applicable, instead of giving effect to the provisions contained in this Section A.4(b) with respect to the shares of Series A Preferred Stock held by such holders.

(c) <u>Alternative Payment</u>. The Series A Preferred Stock constitutes a "common stock" for U.S. federal income tax purposes. Accordingly, notwithstanding Section A.4(a) or Section A.4(b), if, upon a Liquidation Event or Liquidity Event, the holders of outstanding shares of Series A Preferred Stock would receive more than the Original Issue Price plus any then declared but unpaid dividends on the Series A Preferred Stock in the event all of their shares of Series A Preferred Stock were converted into shares of Common Stock in accordance with Section A.6(a) hereof immediately prior to the relevant Liquidation Event or Liquidity Event and such shares of Common Stock received liquidating or other distributions from the Corporation, or payments in the Liquidity Event, as applicable, then, instead of receiving the Series A Preference Amount described in Section A.4(a) or Section A.4(b), each holder of outstanding shares of Series A Preferred Stock shall be entitled to be paid an amount per share of Series A Preferred Stock equal to such greater amount (the "Alternative Amount"), without actually having to convert its shares of Series A Preferred Stock. In connection with the foregoing, and for the avoidance of doubt, a holder of outstanding shares of Series A Preferred Stock shall be entitled to receive the Series A Preference <u>or</u> the Alternative Payment, whichever is greater, but in no event will a holder of outstanding shares of Series A Preferred Stock be entitled to receive <u>both</u> the Series A Preference Amount and the Alternative Amount.

5. <u>Optional Redemption</u>.

(a) <u>Redemption Election</u>. At any time on or after the fifth (5th) anniversary of the Filing Date (as defined below), the holders of not less than a Majority Interest may elect to have redeemed by the Corporation up to one hundred percent (100%) of the originally issued and outstanding shares of Series A Preferred Stock held by each holder of Series A Preferred Stock at such time.

4

LIBC/1990508.7

(b) <u>Redemption Procedure</u>. Any election by a Majority Interest pursuant to Section A.5(a) shall be made by written notice to the Corporation and the other holders of Series A Preferred Stock at least forty-five (45) days prior to the redemption date specified by such holders in such notice. Upon such election, all holders of Series A Preferred Stock shall be deemed to have elected to have the relevant percentage of their shares of Series A Preferred Stock redeemed pursuant to this Section A.5 and such election shall bind all holders of Series A Preferred Stock. The date on which any Series A Preferred Stock is to be redeemed pursuant to this Section A.5 is referred to herein as a "Series A Redemption Date."

(c) <u>Redemption Price</u>. The redemption price for the shares of Series A Preferred Stock redeemed pursuant to this Section A.5 shall be an amount equal to (i) $1.00, <u>plus</u> (ii) an amount equal to the product of (A) the Series A Preference Amount, and (B) the total number of shares redeemed pursuant to this Section A.5. The aggregate redemption price upon any redemption pursuant to this Section A.5 shall be payable in cash in immediately available funds to the respective holders of the Series A Preferred Stock on the Series A Redemption Date.

(d) <u>Insufficient Funds</u>. If the funds of the Corporation legally available to redeem shares of Series A Preferred Stock on the Series A Redemption Date are insufficient to redeem the total number of such shares required to be redeemed on such date, the Corporation shall (i) take any action necessary or appropriate, to the extent reasonably within its control, to remove promptly any impediments to its ability to redeem the total number of shares of Series A Preferred Stock required to be so redeemed, including, without limitation, (A) to the extent permissible under applicable law, reducing the stated capital of the Corporation or causing a revaluation of the assets of the Corporation to create sufficient surplus to make such redemption and (B) incurring any indebtedness necessary to make such redemption to the extent permissible under applicable law and by the Corporation's lenders, and (ii) in any event, use any funds that are legally available to redeem the maximum possible number of such shares from the holders of such shares to be redeemed in proportion to the respective number of such shares that otherwise would have been redeemed if all such shares had been redeemed in full. At any time thereafter when additional funds of the Corporation are legally available to redeem such shares of Series A Preferred Stock, the Corporation shall immediately use such funds to redeem the balance of the shares that the Corporation became obligated to redeem on the Series A Redemption Date (but which it has not yet redeemed) at the applicable redemption price.

(e) <u>Interest</u>. If any shares of Series A Preferred Stock are not redeemed on the Series A Redemption Date for any reason, all such unredeemed shares shall remain outstanding and entitled to all the rights and preferences provided herein, and the Corporation shall pay interest on the applicable redemption price of such unredeemed shares at an aggregate per annum rate (the "Interest Rate") equal to ten percent (10%) (increased by one percent (1%) at the end of each three (3) month period thereafter until the applicable redemption price, and any interest thereon, is paid in full, or until the Interest Rate equals fifteen percent (15%)) with such interest to accrue daily in arrears and to be compounded quarterly; <u>provided, however</u>, that in no event shall such interest exceed the maximum permitted rate of interest under applicable law (the "Maximum Permitted Rate"). In the event that fulfillment of any provision hereof results in such rate of interest being in excess of the Maximum Permitted Rate, the amount of interest required to be paid hereunder shall automatically be reduced to eliminate such excess; <u>provided, however</u>, that any subsequent increase in the Maximum Permitted Rate shall be retroactively effective to

5

LIBC:1990508.7

the Series A Redemption Date to the extent permitted by law. Any shares of Series A Preferred Stock which are not redeemed upon the Series A Redemption Date shall remain entitled to all rights and privileges specified herein until redeemed.

(f) <u>Surrender of Certificates</u>. Each holder of shares of Series A Preferred Stock to be redeemed shall surrender the certificate or certificates representing such shares to the Corporation, duly assigned or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto), or, in the event the certificate or certificates are lost, stolen or missing, shall deliver an affidavit of loss (together with a Lost Certificate Indemnification Agreement (as defined in Section 6.(c)(i)), at the principal executive office of the Corporation or such other place as the Corporation may from time to time designate by notice to the holders of Series A Preferred Stock, and each surrendered certificate shall be canceled and retired and the Corporation shall thereafter make payment of the applicable redemption price by certified check or wire transfer; <u>provided, however</u>, that if the Corporation has insufficient funds legally available to redeem all shares of Series A Preferred Stock required to be redeemed, each such holder shall, in addition to receiving the payment of the portion of the aggregate redemption price that the Corporation is not legally prohibited from paying to such holder by certified check or wire transfer, receive a new stock certificate for those shares of Series A Preferred Stock not so redeemed.

6. <u>Conversion</u>. Shares of Series A Preferred Stock shall be converted into Common Stock in accordance with the following:

(a) <u>Voluntary Conversion</u>. Upon the written election of the holder thereof and without payment of any additional consideration, each outstanding share of Series A Preferred Stock held by such holder shall be converted into such number of fully paid and nonassessable shares of Common Stock as is determined by dividing (A) the Original Issue Price by (B) the Conversion Price at the time in effect for such Series A Preferred Stock (such quotient, the "Conversion Rate"). The initial "Conversion Price" per share for shares of Series A Preferred Stock shall be the Original Issue Price, subject to adjustment as set forth in Section A.7. Any election by a holder of Series A Preferred Stock pursuant to this Section A.6(a) shall be made by written notice to the Corporation, and such notice may be given at any time and from time to time after the date of issuance of the Series A Preferred Stock and through and including the day which is fifteen (15) days prior to the Series A Redemption Date or the closing of any Liquidity Event, whichever is earlier.

(b) <u>Automatic Conversion</u>.

(i) Upon the written election of a Majority Interest and without the payment of any additional consideration, each outstanding share of Series A Preferred Stock shall automatically be converted, without the payment of any additional consideration, into fully paid and nonassessable shares of Common Stock at the Conversion Rate. Any election by a Majority Interest pursuant to this Section A.6(b)(i) shall be made by written notice to the Corporation and the other holders of Series A Preferred Stock, and such notice may be given at any time after the date of issuance of the Series A Preferred Stock and through and including the date which is thirty (30) days prior to the closing of any Liquidity

6

Event. Upon such election, all holders of the Series A Preferred Stock shall be deemed to have elected to voluntarily convert all outstanding shares of Series A Preferred Stock into shares of Common Stock pursuant to this Section A.6(b)(i) and such election shall bind all holders of Series A Preferred Stock.

(ii) Each outstanding share of Series A Preferred Stock shall automatically be converted, without the payment of any additional consideration, into fully paid and nonassessable shares of Common Stock at the Conversion Rate as of, and in all cases subject to, the closing of the Corporation's first underwritten public offering on a firm commitment basis by a nationally recognized investment banking organization or organizations pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Securities Act"), covering the offer and sale of Common Stock (i) at a price per share of Common Stock of not less than $7.41 (appropriately adjusted for stock splits, stock dividends, combinations, recapitalizations, and the like), (ii) with respect to which the Corporation receives aggregate net proceeds attributable to sales for the account of the Corporation (after deduction of underwriting discounts and commissions) of not less than $50,000,000, and (iii) with respect to which such Common Stock is listed for trading on either the New York Stock Exchange or the NASDAQ National Market (a "QPO"). If a closing of a QPO occurs, all outstanding shares of Series A Preferred Stock shall be deemed to have been converted into shares of Common Stock immediately prior to such closing.

(c) Procedure for Conversion.

(i) Voluntary Conversion. Upon election to convert pursuant to Section A.6(a), the relevant holder or holders of Series A Preferred Stock shall surrender the certificate or certificates representing the Series A Preferred Stock being converted to the Corporation, duly assigned or endorsed for transfer to the Corporation (or accompanied by duly executed stock powers relating thereto) or, if lost, shall deliver an affidavit of loss to the Corporation, at its principal executive office or such other place as the Corporation may from time to time designate by notice to the holders of the Series A Preferred Stock; provided, in the event of the delivery of an affidavit of loss to the Corporation, the holder shall agree in writing to indemnify the Corporation for the full amount of any loss or damage it may sustain as a result of the loss of the certificate or certificates representing the Series A Preferred Stock and replacement of same, including all reasonable attorney's fees (the "Lost Certificate Indemnification Agreement"). Upon surrender of such certificate(s) or delivery of an affidavit of loss, the Corporation shall issue and send by hand delivery, by courier or by first class mail (postage prepaid) to the holder thereof or to such holder's designee, at the address designated by such holder, certificates for the number of shares of Common Stock to which such holder shall be entitled upon conversion. The issuance of certificates for Common Stock upon conversion of Series A Preferred Stock shall be deemed effective as of the date of surrender of such Series A Preferred Stock certificates or delivery of such affidavit of loss (together with a Lost Certificate Indemnification Agreement) and will be made without charge to the holders of

7

such shares for any issuance tax in respect thereof or other costs incurred by the Corporation in connection with such conversion and the related issuance of such stock.

(ii) <u>Automatic Conversion</u>. Upon election to convert pursuant to Section A.6(b)(i) or as of the closing of a QPO (each, an "Automatic Conversion Date"), all outstanding shares of Series A Preferred Stock shall be converted into shares of Common Stock without any further action by the holders of such shares and whether or not the certificates representing such shares of Series A Preferred Stock are surrendered to the Corporation. On an Automatic Conversion Date, all rights with respect to the Series A Preferred Stock so converted shall terminate, except any of the rights of the holders thereof upon surrender of their certificate or certificates therefor or delivery of an affidavit of loss (together with the Lost Certificate Indemnification Agreement) thereof to receive certificates for the number of shares of Common Stock into which such shares of Series A Preferred Stock have been converted. If so required by the Corporation, certificates surrendered for conversion shall be endorsed or accompanied by a written instrument or instruments of transfer, in form satisfactory to the Corporation, duly executed by the registered holder or by his, her or its attorney duly authorized in writing. Upon surrender of such certificates or affidavit of loss (together with the Lost Certificate Indemnification Agreement), the Corporation shall issue and deliver to such holder, promptly (and in any event in such time as is sufficient to enable such holder to participate in such QPO) at such office and in its name as shown on such surrendered certificate or certificates, a certificate or certificates for the number of shares of Common Stock into which the shares of the Series A Preferred Stock surrendered are convertible on such Automatic Conversion Date.

(d) <u>Reservation of Stock Issuable Upon Conversion</u>. The Corporation shall at all times reserve and keep available out of its authorized but unissued shares of Common Stock, solely for the purpose of effecting the conversion of the shares of Series A Preferred Stock, such number of its shares of Common Stock as shall from time to time be sufficient to effect the conversion of all outstanding shares of Series A Preferred Stock; and if at any time the number of authorized but unissued shares of Common Stock shall not be sufficient to effect the conversion of all outstanding shares of Series A Preferred Stock, the Corporation will take such corporate action as may be necessary to increase the number of its authorized but unissued shares of Common Stock to such number of shares as shall be sufficient for such purpose, and to reserve the appropriate number of shares of Common Stock for issuance upon such conversion.

(e) <u>No Closing of Transfer Books</u>. The Corporation shall not close its books against the transfer of shares of Series A Preferred Stock in any manner that would interfere with the timely conversion of any shares of Series A Preferred Stock.

7. <u>Adjustments</u>.

(a) <u>Subdivision or Combination of Common Stock</u>. If the Corporation shall at any time after the date this Amended and Restated Certificate of Incorporation is first filed with the Secretary of State of Delaware (the "Filing Date") subdivide its outstanding shares of

8

Common Stock into a greater number of shares (by any stock split, stock dividend or otherwise), the Conversion Price in effect immediately prior to such subdivision shall be proportionately reduced, and, conversely, if the Corporation shall at any time after the Filing Date combine its outstanding shares of Common Stock into a smaller number of shares (by any reverse stock split or otherwise), the Conversion Price in effect immediately prior to such combination shall be proportionately increased.

(b) <u>Reorganization or Reclassification</u>. If at any time after the Filing Date any capital reorganization or reclassification of the capital stock of the Corporation shall be effected in such a way that holders of Common Stock shall be entitled to receive stock, securities or assets with respect to or in exchange for Common Stock, then, as a condition of such reorganization or reclassification, lawful and adequate provisions shall be made whereby each holder of a share or shares of Series A Preferred Stock shall thereupon have the right to receive, upon the basis and upon the terms and conditions specified herein and in lieu of the shares of Common Stock immediately theretofore receivable upon the conversion of such share or shares of Series A Preferred Stock, as the case may be, such shares of stock, securities or assets as may be issued or payable with respect to or in exchange for a number of outstanding shares of such Common Stock equal to the number of shares of such Common Stock immediately theretofore receivable upon such conversion had such reorganization or reclassification not taken place, and in any such case appropriate provisions shall be made with respect to the rights and interests of such holder to the end that the provisions hereof (including, without limitation, provisions for adjustments of the Conversion Price) shall thereafter be applicable, as nearly as may be, in relation to any shares of stock, securities or assets thereafter deliverable upon the exercise of such conversion rights.

(c) <u>Mergers, Asset Sales and Change of Control Transactions.</u> Upon the election of a Majority Interest made in connection with any merger or consolidation of the Corporation with or into another corporation, any sale of all or substantially all of the assets of the Corporation to another corporation or any other Liquidity Event, each share of Series A Preferred Stock shall remain outstanding and shall thereafter be convertible (or shall be converted into a security which shall be convertible) into the kind and amount of securities or other property to which a holder of the number of shares of Common Stock of the Corporation deliverable upon conversion of such share of Series A Preferred Stock would have been entitled upon such merger, consolidation, asset sale or other Liquidity Event. In such case, appropriate adjustment (as determined in good faith by the Board of Directors and a Majority Interest) shall be made in the application of the provisions in Section A.7 with respect to the rights and interests thereafter of the holders of the Series A Preferred Stock, to the end that the provisions set forth in Section A.7 (including provisions with respect to changes in and other adjustments of the Conversion Price) shall thereafter be applicable, as nearly as possible, in relation to any securities or other property thereafter deliverable upon the conversion of the Series A Preferred Stock. Any election by a Majority Interest pursuant to this Section A.7(c) shall be made by written notice to the Corporation and the other holders of Series A Preferred Stock at least five (5) days prior to the closing of the relevant transaction. Upon any such election of a Majority Interest hereunder, all holders of Series A Preferred Stock shall be deemed to have so elected as provided in this Section A.7(c) and such election shall bind all holders of Series A Preferred Stock. Notwithstanding anything to the contrary contained herein, the holders of a Majority Interest shall have the right to elect to give effect to the conversion rights contained in Section

9

A.6 or the rights contained in Section A.4(b), if applicable, instead of giving effect to the provisions contained in this Section A.7(c) with respect to the shares of Series A Preferred Stock held by such holders.

       8.     <u>Covenants</u>. The Corporation shall not (in any case, by merger, consolidation, operation of law or otherwise), and shall not permit any subsidiary to (in any case, by merger, consolidation, operation of law or otherwise), without first having provided written notice of such proposed action to each holder of outstanding shares of Series A Preferred Stock and having obtained the affirmative vote or written consent of the holders of a Majority Interest:

       (a)     declare or pay any dividends or make any distributions of cash, property or securities of the Corporation in respect of its capital stock, or apply any of its assets to the redemption, retirement, purchase or other acquisition of its capital stock, directly or indirectly, through subsidiaries or otherwise, except for (i) the redemption of Series A Preferred Stock pursuant to and as provided in this Amended and Restated Certificate of Incorporation, (ii) the repurchase, pursuant to agreements approved by the Board of Directors of the Corporation, of up to 1,154,734 shares of Common Stock or options therefor issued to directors, officers or employees of the Corporation in connection with their service as directors or officers of the Corporation or their employment by the Corporation, in each case authorized by the Board of Directors or a committee thereof and issued pursuant to duly authorized stock option plans of the Corporation, in any case at prices not in excess of cost, or (iii) dividends or distributions payable solely in shares of Common Stock;

      (b)     reclassify any capital stock in a manner that adversely affects the designations, preferences, powers and/or the relative, participating, optional or other special rights, or the restrictions provided for the benefit of, the Series A Preferred Stock;

      (c)     authorize or issue, or obligate itself to issue, any convertible debt or other debt with any equity participation, any securities convertible into or exercisable or exchangeable for any equity securities, or any other equity security, in any case ranking senior to or on parity with the Series A Preferred Stock as to liquidation, sale or merger preferences, redemption, or dividend rights, or with any special voting rights, or having any preference in excess of the purchase price therefor; or permit any subsidiary of the Corporation to issue any capital stock, or securities convertible into or exercisable or exchangeable for capital stock or other securities of such Subsidiary, to any person or entity other than the Corporation;

      (d)     amend, alter or repeal (whether by merger, consolidation, operation of law, or otherwise) any provision of, or add any provision to, this Amended and Restated Certificate of Incorporation (including, without limitation, increasing the total number of shares of Preferred Stock that the Corporation shall have the authority to issue) or the bylaws of the Corporation as in effect on the Filing Date;

      (e)     effect any Liquidation Event, or any merger, consolidation, or sale, transfer or license of all or substantially all of the assets of the Corporation or any subsidiary thereof, or any other Liquidity Event;

      (f)     incur any indebtedness in excess of $500,000;

10

LIBC/1990508.7

(g) make any material investments or acquire any other corporation or business concern, whether by acquisition of assets, capital stock or otherwise, and whether in consideration of the payment of cash, the issuance of capital stock or otherwise;

(h) take any other action not described in Section A.8(a)-(g) if such action could adversely alter or change the preferences, rights, privileges or powers of, or the restrictions provided for the benefit of, the Series A Preferred Stock; or

(i) enter into any agreement to do any of the foregoing that is not expressly made conditional on obtaining the affirmative vote or written consent of a Majority Interest.

Further, the Corporation shall not, by amendment, alteration or repeal of this Amended and Restated Certificate of Incorporation (whether by merger, consolidation, operation of law, or otherwise) or through any Liquidation Event, any Liquidity Event, or any other reorganization, recapitalization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities, agreement or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Corporation and shall at all times in good faith assist in the carrying out of all the provisions of this Article IV and in the taking of all such action as may be necessary or appropriate in order to protect the rights of the holders of the Series A Preferred Stock against impairment. Any successor to the Corporation shall agree in writing, as a condition to such succession, to carry out and observe the obligations of the Corporation hereunder with respect to the Series A Preferred Stock.

9. Notice; Adjustments; Waivers.

(a) Liquidation Events, Etc. In the event (i) the Corporation establishes a record date to determine the holders of any class of securities who are entitled to receive any dividend or other distribution or who are entitled to vote at a meeting (or by written consent) in connection with any of the transactions identified in clause (ii) hereof, or (ii) any Liquidation Event, any Liquidity Event, QPO or any other public offering becomes reasonably likely to occur, the Corporation shall mail or cause to be mailed by first class mail (postage prepaid) to each holder of Series A Preferred Stock at least thirty (30) days prior to such record date specified therein or the expected effective date of any such transaction, whichever is earlier, a notice specifying (A) the date of such record date for the purpose of such dividend or distribution or meeting or consent and a description of such dividend or distribution or the action to be taken at such meeting or by such consent, (B) the date on which any such Liquidation Event, Liquidity Event, QPO or other public offering is expected to become effective, and (C) the date on which the books of the Corporation shall close or a record shall be taken with respect to any such event. Such notice shall be accompanied by a certificate prepared by the chief financial officer of the Corporation describing in detail (1) the facts of such transaction, (2) the amount(s) per share of Series A Preferred Stock or Common Stock each holder of Series A Preferred Stock would receive pursuant to the applicable provisions of this Amended and Restated Certificate of Incorporation, and (3) the facts upon which such amounts were determined.

(b) Adjustments; Calculations. Upon the occurrence of each adjustment or readjustment of the Conversion Price pursuant to Section A.7, the Corporation at its expense shall promptly compute such adjustment or readjustment in accordance with the terms hereof and

prepare and furnish to each holder of Series A Preferred Stock a certificate setting forth in detail (i) such adjustment or readjustment, (ii) the Conversion Price before and after such adjustment or readjustment, and (iii) the number of shares of Common Stock and the amount, if any, of other property which at the time would be received upon the conversion of such holder's shares of Series A Preferred Stock. All such calculations shall be made to the nearest cent or to the nearest one hundredth (1/100) of a share as the case may be.

(c) Waiver of Notice. The holder or holders of a Majority Interest may, at any time upon written notice to the Corporation, waive any notice or certificate delivery provisions specified herein for the benefit of such holders, and any such waiver shall be binding upon all holders of such securities.

(d) Other Waivers. The holder or holders of a Majority Interest may, at any time upon written notice to the Corporation, waive compliance by the Corporation with any term or provision herein, provided that any such waiver does not affect any holder of outstanding shares of Series A Preferred Stock in a manner materially different than any other holder, and any such waiver shall be binding upon all holders of Series A Preferred Stock and their respective transferees.

10. No Reissuance of Series A Preferred Stock. No share or shares of Series A Preferred Stock acquired by the Corporation by reason of redemption, purchase, conversion or otherwise shall be reissued, and all such shares shall be canceled, retired and eliminated from the shares which the Corporation shall be authorized to issue.

11. Contractual Rights of Holders. The various provisions set forth herein for the benefit of the holders of the Series A Preferred Stock shall be deemed contract rights enforceable by them, including, without limitation, one or more actions for specific performance.

B. COMMON STOCK

1. Voting.

(a) Election of Directors. The holders of Common Stock voting together with the holders of outstanding Series A Preferred Stock as a single class shall be entitled to elect all of the Directors of the Corporation. Such Director(s) shall be elected by a plurality vote, with the elected candidates being the candidates receiving the greatest number of affirmative votes (with each holder entitled to cast one (1) vote for or against each candidate with respect to each share held by such holder), with votes cast against such candidates and votes withheld having no legal effect. The election of such Directors shall occur at the annual meeting of holders of capital stock or at any special meeting called and held in accordance with the by-laws of the Corporation, or by consent in lieu thereof in accordance with this Amended and Restated Certificate of Incorporation and applicable law.

(b) Voting Generally. Except as otherwise expressly provided herein or required by law, each holder of outstanding shares of Common Stock shall be entitled to one (1) vote in respect of each share of Common Stock held thereby of record on the books of the Corporation for the election of directors and on all matters submitted to a vote of shareholders of the Corporation. Notwithstanding the provisions of Section 242(b) of the Delaware General

12

Corporation Law, the number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of a majority of the outstanding shares of Common Stock and Series A Preferred Stock voting together as a single class.

2. **Dividends.** Subject to the payment in full of all preferential dividends to which the holders of the Series A Preferred Stock are entitled hereunder, the holders of Common Stock shall be entitled to receive dividends out of funds legally available therefor at such times and in such amounts as the Board of Directors may determine in its sole discretion, with holders of Series A Preferred Stock and Common Stock sharing pari passu in such dividends, as contemplated by Section A.3.

3. **Liquidation.** Upon any Liquidation Event, after the payment or provision for payment of all debts and liabilities of the Corporation and all preferential amounts to which the holders of Series A Preferred Stock are entitled with respect to the distribution of assets in liquidation, the holders of Common Stock shall be entitled to share ratably in the remaining assets of the Corporation available for distribution, as contemplated by Section A.4.

## ARTICLE V

In furtherance of and not in limitation of powers conferred by statute, it is further provided:

Election of Directors need not be by written ballot unless the bylaws of the Corporation so provide.

Except as provided in Section A.8(d), the Board of Directors is expressly authorized to adopt, amend or repeal the bylaws of the Corporation to the extent specified therein.

## ARTICLE VI

Meetings of stockholders may be held within or without the State of Delaware, as the bylaws may provide.

## ARTICLE VII

To the extent permitted by law, the books of the Corporation may be kept outside the State of Delaware at such place or places as may be designated in the bylaws of the Corporation or from time to time by its Board of Directors.

## ARTICLE VIII

A Director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a Director of the Corporation, except for liability (a) for any breach of the Director's duty of loyalty to the Corporation or its

13

LIBC/1990508.7

stockholders, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) under Section 174 of the Delaware General Corporation Law, or (d) for any transaction from which the Director derived an improper personal benefit. If the Delaware General Corporation Law is amended after the effective date of this Amended and Restated Certificate of Incorporation to authorize corporate action further eliminating or limiting the personal liability of Directors, then the liability of a Director of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law of the State of Delaware.

Any repeal or modification of this Article VIII by the stockholders of the Corporation or by an amendment to the Delaware General Corporation Law shall not adversely affect any right or protection existing at the time of such repeal or modification with respect to any acts or omissions occurring either before such repeal or modification of a person serving as a Director prior to or at the time of such repeal or modification.

## ARTICLE IX

Except as otherwise provided herein, the Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.