UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-CV-62028-LENARD/GOODMAN

CLINGMAN & HANGER MANAGEMENT
ASSOCIATES, LLC as Trustee

        Plaintiff,

v.

DAVID KNOBEL, JEFFREY PIERNE, NEAL
YAWN, DEAN BARTNESS, SIANA
STEWART, and CID YOUSEFI

        Defendants.

## DEFENDANTS' MOTION TO EXTEND EXPERT DEADLINES AND EXPEDITE BRIEFING

Defendants David Knobel, Jeffrey Pierne, Neal Yawn, Dean Bartness, Siana Stewart, and Cid Yousefi ("Defendants") hereby move for an extension of the expert deadlines, and because of the time urgency of the motion, request expedited briefing. In support, Defendants state as follows:

### I. Preliminary Statement

1. As the case presently sits, fact discovery is not yet complete. Depositions of two of the most important fact witnesses in the case remain to be taken: TJS Deemer Dana LLP ("TJS") and the United States Department of Education ("DoE").

2. The fact evidence expected to be developed by these depositions is central to Defendants' case. As a result of two separate amendments to the court's pretrial deadlines, however, the fact discovery cut-off has extended past the date on which Defendants' expert designations and reports are due. Consequently, even though these depositions are critical to the

development of Defendants' expert opinions, those opinions now are due before two essential fact depositions have been taken. The circumstances causing this impossible result are the fault of Plaintiff. As a result, Defendants respectfully request that the pretrial deadlines be amended to allow Defendants sufficient time to complete these depositions and allow their experts a reasonable period of time thereafter to formulate their opinions.

## II. Factual Background

3.  On March 9, 2017, the Court entered its original scheduling order in this case. [Dkt. 53]. That original scheduling order wisely (1) contemplated that initial expert reports would not be due until twenty-nine days after the close of fact discovery and (2) afforded approximately thirty-days for Defendants to submit their expert disclosures after receiving Plaintiff's expert disclosures. Specifically, the original scheduling order required Plaintiff's expert disclosures to be furnished by September 29, 2017, and thereafter, Defendants' expert disclosures were to be furnished by October 27, 2017. *Id.* The original scheduling order further required both Plaintiff and Defendants to make their experts available for deposition within fourteen days after their respective disclosure deadlines. *Id.*

4.  By this formula, Defendants' experts could have the benefit of considering all of the material fact evidence in the case as well as the opinions and testimony of Plaintiff's experts when formulating their opinions. Given Plaintiff's burden of proof in the case, this structure was both fair and just.

5.  On July 11, 2017, however, the Court amended the scheduling order to account for multiple months of inactivity after the original Complaint was dismissed. [Dkt. 89]. The Court required Plaintiff's expert disclosures and reports to be furnished by December 29, 2017 and Defendants' disclosures and reports to be furnished by January 22, 2018. *Id.* Although the

result compressed the period of expert disclosures, Defendants' experts still had the ability to consider all of the fact deposition testimony and evidence before rendering their opinions.

6. On October 23, 2017, as a result of delays caused by Hurricane Irma, the Court further amended the scheduling order. [Dkt. 126]. That scheduling order extended fact discovery by roughly a month to January 3, 2018; it also extended the deadline for Plaintiff's expert disclosures and reports to January 12, 2018, and Defendants' expert disclosures and reports to January 26, 2018. [Dkt. 126]. This latest extension of the fact discovery deadline resulted in a more significant compression of the expert discovery deadlines, specifically the time following Plaintiff's expert disclosures when Defendants' expert disclosures were due. Pursuant to this scheduling order, Plaintiff submitted its expert disclosures and reports on January 12, 2018. As a result, Defendants' disclosures and reports are due on January 26—only nine business days later.

7. Most critically, the new expert witness deadlines did not anticipate the fact that Plaintiff sought and obtained two separate extensions of fact depositions over the past several weeks, after the latest scheduling order was entered.

### a. The Court Extends the Fact Discovery Deadline for TJS.

8. TJS is a third-party independent auditing firm. At all material times both preceding and during the relevant time periods in this case, TJS was employed by FCC to conduct audits of FCC's compliance under Title IV. Among other things, TJS was required on a yearly basis to test and ultimately opine as to whether the Financial Aid Department at FCC properly accounted for all of the funds that FCC drew down from the DoE.

9. The deposition of TJS was originally set for January 5, 2018 in Atlanta. Had the deposition been taken on that date, the testimony would have been received three weeks before

Defendants' expert disclosures were due. But on the day before the scheduled deposition, a large snowstorm struck the Northeastern United States. Hundreds of plane flights were cancelled. Counsel for Plaintiff contacted the undersigned and requested that the TJS deposition be postponed because of the possibility that Plaintiff's counsel would be unable to travel from New York to Atlanta. Recognizing the extraordinary circumstances, Defendants' counsel agreed even though his flight from Miami to Atlanta were not affected. *See* **Exhibit 1**. Defendants accommodated this request and agreed to Plaintiff's request of the Court to allow the deposition to occur later, even though Plaintiff had refused to extended similar courtesies in the past when Defendants have asked for other depositions to be continued because of scheduling issues on Defendants' end. *See* **Exhibits 2 and 3.**

10. On January 4, 2018, Plaintiff sought and obtained (by order on January 8) an enlargement of the discovery fact cut-off to allow for the taking of TJS on January 19, 2018.

### b.  The Court Extends the Fact Discovery Deadline for The DoE.

11. The DoE is the federal agency charged with administering, and enforcing compliance with, the Title IV Financial Aid Program. Plaintiff's central contention in this case is that the downfall of FCC was caused by Defendants' alleged non-compliance with the rules and regulations of the DoE.

12. After being served with subpoenas from both Defendants and Plaintiff, DoE was originally scheduled to be deposed on November 6, 2017, over two months before the date on which Defendants would have had to disclose expert witness opinions. However, Plaintiff sought and obtained an enlargement of that date by order dated December 11, 2017. [Dkt. 164]. The deposition was to occur in Atlanta where the relevant DoE field office is located.

13. As the Court is aware, under Local Rule 26.1(h), a party must give another party at least fourteen days' notice of an out-of-state deposition for that notice to be valid. Here, though, Plaintiff's counsel failed to give Defendants' counsel any notice of the deposition date that Plaintiff's counsel and the DoE agreed to.

14. In fact, Defendants' counsel discovered the deposition date only by happenstance. On January 5, 2018, the DoE sent an email to Plaintiff's and Defendants' counsel asking that the location of the upcoming deposition be moved because the college football national championship game was scheduled for the same night. The request seemed strange to defense counsel because, to counsels' knowledge, no deposition had ever been scheduled, much less scheduled on the night of the championship football game. In making inquiry of the Plaintiff, it became clear that Plaintiff had never properly noticed the deposition, and only Plaintiff and the DoE knew of the date for deposition.

15. Upon the realization that it had violated federal and local rules by failing to provide adequate notice of the deposition, Plaintiff's counsel cancelled the deposition. *See* **Exhibit 4**. Once again, Plaintiff sought and obtained permission of the Court to extend the fact discovery deadline to accommodate a later date for the taking of the DoE deposition.

16. As a consequence of these extensions of the depositions of TJS and DoE, each of which was requested by Plaintiff to accommodate its need as a result of either bad weather or internal office errors, the Court's deadline for Defendants' expert disclosures now sits before the conclusion of discovery of two of the most important fact witnesses in the case.

### III. Defendants' Need For the TJS and DoE Depositions Before Expert Disclosure.

17. Defendants will suffer substantial prejudice if not granted an extension of the current January 26 deadline for Defendants' expert disclosures.

18.     The fact deposition of third party TJS now is set for Friday, January 19, 2018. As previously noted, Plaintiff's central contention is that Defendants knowingly violated governmental regulations concerning how and when a college can access federal student loan funds. Specifically, Plaintiff alleges that Defendants knowingly accessed loan funds without a student roster to justify that amount of funds accessed. These are the financial aid practices that Plaintiff alleges give rise to Defendants' alleged breaches of fiduciary duties of loyalty and care.

19.     TJS is expected to testify that it tested for—but never found—any evidence of the type of the illegal practices Plaintiff has alleged Defendants committed. In fact, TJS will likely testify that every audit of FCC it performed when FCC was under Defendants' control resulted in a materially clean audit and that the DoE expressly approved of the financial aid practices at FCC. If elicited, this testimony will be critical to the development of Defendants' expert opinions.

20.     Moreover, the fact deposition of the DoE (now set for January 31, 2018) is equally important for the development of Defendants' expert opinions. Again, Plaintiff alleges that the collapse of FCC was caused solely by the misconduct of Defendants who improperly drawing down funds from the DoE and that, but for such conduct, the DoE would not have implemented any restrictions on the flow of financial aid monies. Thus, Plaintiff relies heavily on the alleged actions taken by the DoE in attempting to establish Defendants' liability. But Defendants believe that the DoE will actually testify that after a thorough investigation of the activities at FCC, the DoE found no wrongdoing. Indeed, it is a matter of undisputed fact that the DoE has never taken any action against any of the Defendants. The development of this testimony is central to the defense and the development of the opinions of the Defendants' experts.

21. Additionally, the DoE has been compelled—and has indicated its agreement—to produce documents maintained at the DoE in connection with its oversight of FCC. Many of these documents are expected to be highly material to the interactions between Defendants while serving at FCC and the oversight personnel at the DoE. These documents are expected to be central to the defense of the case. Although Defendants have been actively seeking these documents since last fall, until now the DoE has rejected any attempt to disclose those records. While DoE has promised to produce some documents in advance of its deposition, because of the scope of the production and the intervening holidays, the DoE has missed several promised deadlines. Thus, Defendants' experts have not had the opportunity to review the production or analyze how such documents would impact their opinions. *See* **Exhibits 5 and 6** (showing that the Department has repeatedly delayed its production and has yet to produce any documents to Defendants). Through no fault of Defendants, their experts are unable to see fact discovery from a critical fact witness necessary to develop their opinions and create meaningful reports.

22. Since the original scheduling order was entered, and through both of the amendments to that order, the Court has always seen the wisdom and fairness of allowing the close of fact discovery before the disclosure of expert opinions. For good reason, experts must be given the right and the time to study the evidence of a fully-developed factual record before formulating their opinions. As a result of Plaintiff's multiple requests for delays in fact discovery deadlines, Defendants now are faced with the highly prejudicial situation of having to present expert opinions without their experts being able to consider the testimony of what may prove to be the two most significant witnesses in this case

23. The relevance of these depositions is even more important as a result of the failure of Plaintiff to retain virtually any records of FCC's business operations, specifically including

any records of the Financial Aid operations at FCC. FCC utilized a computer based student information system called STARS at all material times. The data contained in STARS, if produced, would allow Defendants to disprove the allegations leveled at them by the Plaintiff. And yet, despite a bankruptcy court order requiring Plaintiff/Trustee to preserve the records of FCC, including the STARS information system, Plaintiff/Trustee apparently allowed STARS to be either destroyed or corrupted to such an extent to render it useless. Such actions have compromised Defendants' ability to fully defend themselves. In light of this spoliation of evidence, Defendants are hopeful that the testimony of TJS and the DoE will assist their experts in better understanding the financial aid operations at FCC.

24.    Ironically, although Plaintiff has indicated that it will oppose the relief sought herein, Plaintiff's experts have expressly stated in their own opinions that they are aware of the pending TJS and DoE depositions and suggest that they may amend their opinions following a review, evaluation, and analysis of the testimony elicited in those depositions. This regrettable situation would likely trigger a second round of depositions resulting in an inefficient waste of resources. By adjusting the schedule now, the Court can avoid duplicative depositions and conserve the parties' and its resources.

**IV. <u>Request for Expedited Briefing</u>**

25.    Given the urgency of the Court's consideration of this motion, Defendants respectfully request that Plaintiff be ordered to respond to this motion by close of business tomorrow, Friday, January 19, 2018 to allow the Court to consider the requested relief in a timely fashion.

## V. Requested Relief

26. Federal Rule of Civil Procedure 16(b)(4) provides that a "schedule may be modified only for good cause and with the judge's consent." Defendants respectfully submit that good cause exists for a modification of the expert discovery deadlines and respectfully request that the Court modify those deadlines in light of the current status of discovery and Plaintiff's experts' representations that they may need to consider the testimony of the upcoming depositions in connection with their own opinions  Defendants request that the deadlines be modified as follows:

   a. Plaintiff's deadline to furnish supplemental expert disclosures: February 14, 2018;

   b. Plaintiff shall make its experts available for deposition fourteen days after that date (i.e., by February 28, 2018);

   c. Defendants' deadline to furnish expert disclosures: February 28, 2018; and

   d. Defendants shall make their experts available for fourteen days after that date (i.e., by March 14, 2018).

## CERTIFICATION PURSUANT TO S.D. Fla. L.R. 7.1(a)

The undersigned counsel certifies that the parties have met and conferred in a good faith effort to resolve the issues listed above and were not able to do so.  Defendants' counsel Michael Kreitzer requested that Plaintiff's counsel agree to the relief sought in this motion, but Plaintiff's counsel Avery Samet refused to do so.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 374-7580

CASE NO. 16-CV-62028-JAL-JG

Facsimile: (305) 374-7593

By:   /s/ Michael N. Kreitzer
     **MICHAEL N. KREITZER**
     (FBN 705561)
     mkreitzer@bilzin.com
     **KENNETH DUVALL**
     (FBN 121826)
     kduvall@bilzin.com
     eservice@bilzin.com
     mavin@bilzin.com
     stapanes@bilzin.com
     *Counsel for David Knobel, Jeffrey Pierne, Neal Yawn, Dean Bartness, Siana Stewart and Cid Yousefi*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF.

     */s/ Kenneth J. Duvall*
     Kenneth Duvall

MIAMI 5734447 82147/47883