UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-62028-CIV-LENARD/GOODMAN

CLINGMAN & HANGER MANAGEMENT
ASSOCIATES, LLC as Trustee

        Plaintiff,

v.

DAVID KNOBEL, JEFFREY PIERNE, NEAL
YAWN, DEAN BARTNESS, SIANA
STEWART, and CID YOUSEFI

        Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE
PROPOSED EXPERT JAMES DONOHUE**

## I.  Introduction

Plaintiff's Memorandum of Law in Opposition to the Motion to Exclude Plaintiff's proposed expert witness, James Donohue (Dkt. 260) fails to (a) provide any basis for Donohue's assumption that the exclusive cause of Florida Career College's ("FCC") bankruptcy was Defendants' conduct, (b) address the flaws in the only approach ultimately relied upon by Donohue (the market approach), (c) justify Donohue's failure to reconcile his two valuation approaches, or (d) justify Donohue's position as a conduit for hearsay via his forensic accounting.

## II.  Legal Argument

### A. Plaintiff fails to provide any basis for Donohue's assumption that the exclusive cause of FCC's bankruptcy was Defendants' conduct.

Donohue assigns the full weight of responsibility for FCC's bankruptcy to Defendants' alleged conduct. However, he provides no reasoning or explanation to support his conclusion. While it is true that a damages expert need not give an opinion on liability, the expert must still explain the link between the cause and resulting damages. Donohue puts forth a speculative opinion and ignores "multiple factors that collectively contributed to FCC's decline in value and ultimate bankruptcy." Burton Rep. at 3 (Dkt. 242).

It is Donohue's burden to show that the damages were a direct result of Defendants' actions and that the amount of those damages could be determined with reasonable certainty. *See, e.g., Whitby v. Infinity Radio Inc*., 951 So.2d 890 (Fla. 4th DCA 2007). In *Whitby*, the expert similarly speculated regarding the cause of damages and "failed to consider numerous external variables, which by their very nature . . . rendered [the expert's] conclusion . . . questionable." *Id*. at 898.  The court held that the "numerous critical variables" that the expert failed to consider rendered it impossible to conclude that the damages were the direct result of what he claimed.

*Id.* Thus, "no weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning." *Id.* at 900; *see also, e.g., Rogers v. Zanetti*, 517 S.W.3d 123, 130 (Tex. App. 2015) (where an expert's testimony as to a company's "value is conclusory, it constitutes no evidence of [the company's] actual value"), *aff'd*, *Rogers v. Zanetti*, 518 S.W.3d 394, 405 (Tex. 2017) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment...And even when some basis is offered for an opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory.") (internal citation omitted).

As in *Whitby*, Donohue cannot conclude to a reasonable degree of professional certainty that Defendants' alleged harmful acts were the direct cause of the bankruptcy. Donohue opined that "but for" FCC being placed on the "docs-first" status through the U.S. Department of Education ("DoE"), it would have been able to "preserve or raise capital as a going concern." (Donohue Rep. at 4–5). He summarily concludes that "the loss of timely access to Title IV funds caused a cash crisis and FCC's eventual bankruptcy." *Id.* But his opinion offers no analysis regarding any other contributing cause, ignores many realities of the business and is pure speculation.

Other causes included, but were not limited to, "FCC's pre-existing lack of working capital, declining student enrollment, increasing governmental regulation, exponential growth by acquisition, post-purchase integration issues, and issues related to the implementation of new and/or improved systems." (Burton Rep. at 3). Indeed, FCC was in financial trouble with poor liquidity and insufficient capital long before being put on the "docs-first" list in March 2014. (*See id.* at 7). After tripling the number of campuses with an acquisition in April 2012, FCC was

never able to reach its predicted growth in student enrollment. (*See id*. at 7) By 2014, FCC had lost approximately $9.4 million in expected revenue. (*Id.* at 8) The acquisition also created financial difficulty regarding the administrative and operational support framework due to the increased number of campuses over an increased number of states. (*Id.* at 9)

This extensive list shows that FCC's bankruptcy was affected by a multitude of factors. However, Donohue chose to ignore all possible causes except the one preferred by Plaintiff. There is no showing from Donohue whether FCC could have survived long in its state of financial stress. Expert testimony fails if there is "'simply too great an analytical gap between the data and the opinion proffered.'" *Chapman v. Procter & Gamble Distrib., LLC,* 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). For Donohue to claim that the exclusive cause of FCC's bankruptcy was being put on "docs-first" status is incorrect and renders his opinion unreliable.

### B.  Plaintiff does not address any of the flaws in Donohue's market approach.

Plaintiff does not even attempt to defend Donohue's valuation opinion against the multiple and significant criticisms set forth in the Motion. (Mot. at 13–15). Thus, despite the "valid concerns" raised by Defendants, Plaintiff has "failed to develop any argument showing that [its expert's] opinion is based on reliable methods or that it provides relevant information that will be helpful to the trier of fact." *Haley v. Kolbe & Kolbe Millwork Co*., No. 14-CV-99, 2016 WL 1180203, at *6 (W.D. Wis. Mar. 25, 2016) (excluding expert).[1] *See also, e.g., Hodges v. Salvanalle, Inc.,* No. 1:12-CV-2851, 2014 WL 584756, at *5 (N.D. Ohio Feb. 12, 2014) (excluding expert in part because non-movant failed to respond to certain arguments).

---

[1] *Reconsideration denied*, No. 14-CV-99, 2016 WL 3190286 (W.D. Wis. June 7, 2016), *aff'd sub nom*. *Haley v. Kolbe & Kolbe Millwork Co*., 863 F.3d 600 (7th Cir. 2017).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

This failure alone is a sufficient basis to grant the Motion. *See, e.g., Brown v. Buddy Bee Corp.*, No. 14-CV-24368, 2015 WL 11233388, at *4 (S.D. Fla. Mar. 11, 2015) (granting relief where non-movant failed to address all arguments in a motion; "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded").

Given Donohue's exclusive reliance on this single market approach, it was all the more incumbent upon Plaintiff to show that the market approach was trustworthy. *See Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 180 (S.D.N.Y. 2006). As explained immediately below, this flawed market approach lacks corroboration from any other approach, further indicia of unreliability. As it stands, the Court is left with a lone valuation approach containing several unrebutted, material flaws.

### C. Plaintiff offers no justification for Donohue's failure to reconcile his two valuation approaches, and there is none.

Plaintiff has no explanation for Donohue's failure to reconcile his income and market approaches, which by itself is "an indicator of unreliability" under *Daubert*. *In re Iridium Operating LLC,* 373 B.R. 283, 351 (Bankr. S.D.N.Y. 2007); *see also, e.g., Bailey-Horovits v. Long Branch City*, 2014 WL 641780, at *6 (N.J. Super. Ct. App. Div. Feb 20, 2014) ("When a court has available two valuation approaches which indicate different values, the court must reconcile the approaches.").

Reconciliation of differing approaches to value is standard practice. *See generally In re Pub. Serv. Co. of N.H.* 87, 165 A.3d 695, 700 (2017) (explaining that the expert reconciled the results of the four approaches evaluated); *Lowe's Home Ctrs., Inc. v. Twp. of Marquette*, No. 314111-CV-314301, 2014 WL 1616411, at *2 (Mich. Ct. App. Apr. 22, 2014) (choosing approach to value after reconciling the three approaches and describing why the other two

approaches were wrong). An expert cannot summarily choose an approach to value because "the probative value of an expert's opinion depends entirely upon the facts and reasoning adduced in support of it." *90 Riverdale, LLC v. Borough of Riverdale*, 27 N.J. Tax 328, 338 (Tax Ct. 2013). Without proper reasoning for their decisions, "an expert's conclusion rises no higher than the data which provide the foundation." *Id*. Therefore, an expert should "weigh[] the relative significance, applicability, and defensibility of each value indication" and ultimately reconcile the approaches by relying on what is most appropriate. *Id.* at 343.

In its terse response, Plaintiff summarily claims that Donohue's two valuation "methods did in fact validate each other; the ranges produced by [his] two approaches were within $8 million of each other." Opp. at 12. But that "validation" does not amount to a reconciliation.

According to a leading valuation authority that was cited in the Opposition (Opp. at 14)[2] "When the different valuation approaches result in **materially different value indications**, and the objective of the subject analysis is a point value estimate, the indications should be reconciled into a single value estimate." Shannon Pratt, Valuing a Business: The Analysis and Appraisal of Closely Held Companies (Fifth Edition), at 472 (emphasis added) (attached as **Exhibit 1**). Here, the two different valuation approaches resulted in materially different value indications. The value range generated by the income approach is $27 million to $29 million, while the value range generated by the market (comparable companies) approach is $37 million to $51 million.

Thus, these two ranges differ by at least $8 million, apparently insignificant to Plaintiff, but it is 15%–30% of the values given, a large discrepancy when the goal is to establish value and monetary damages with reasonable precision. The high end of the market valuation range

---

[2] Although Plaintiff relied on this authority, it failed to attach it for the Court to consider.

and the low end of the income valuation range differ by $24 million, almost equal to the low end of the income valuation.  Given such a material inconsistency between the two approaches, Donohue was obligated to reconcile the disparate outcomes.

Instead of explaining Donohue's lack of reconciliation, Plaintiff attempts a sleight-of-hand by noting that valuation opinions should be expressed as a range of values rather than as a single number.  (Opp. at 13).  Defendants agree and did not criticize Donohue for the fact that his valuation opinion is expressed as a range.  But this is no justification for Donohue's failure to reconcile the two different ranges of values produced by the two different approaches.

Plaintiff appears to suggest that an expert can reconcile divergent ranges of value by simply conflating them into one large range, but there is no authority for such a novel claim.  Indeed, under such a theory, reconciliation would be automatic—and meaningless—because the ranges of value could simply be combined to create a larger range in every case.  Moreover, Donohue did not actually rely upon his income approach range at all in providing his opinion of value.   Instead, he arbitrarily adopted the higher-value market approach to the complete exclusion of the lower-value income approach.[3]

Valuing a Business states that, in the rare instance where values are similar, the results can be blended.  But where the values are different, the opinions must be reconciled.  *See generally* **Exhibit 1** at 475–76.  Valuing a Business outlines the appropriate analysis that an analyst should take when value approaches yield different results.  "The analyst could search for an answer, **or at least an explanation to this apparent anomaly**.  As part of this reconciliation

---

[3] Donohue's failure to utilize the preferred discounted cash flow ("DCF") approach is subsumed by his greater mistake of failing to blend or reconcile any income approach at all with his market approach. In other words, even if Donohue were correct in opting to use the direct capitalization income approach instead of the DCF approach, Donohue still failed to blend or reconcile his preferred income approach with the market approach, rendering his final value unreliable.

process, the analyst should recheck all the quantitative analyses and rethink all the qualitative conclusions." *See* **Exhibit 1** at 476 (emphasis added).[4]  One would have expected Donohue to at a minimum explain why the market approach was being given greater weight—in fact, all of the weight—but he did not do so.

The only comment in Donohue's Report on this issue was his passing statement that there was a "lack of a long term but for breach projection for the FCC enterprise."  Donohue Rep. ¶124 (Dkt. 245).  Interestingly, Plaintiff now argues that it is this very statement (repeated at ¶104) that justified Donohue's decision to use the direct capitalization income approach in lieu of the DCF approach.  (Opp. at 15).  Assuming, *arguendo*, that the lack of long term projections justified the use of one income approach over another, this lack of projections cannot justify Donohue's exclusive reliance on the market approach over the very income approach that he purportedly found to be appropriate.

Valuing a Business confirms "the final value opinion regarding the subject business enterprise or business interest should be derived from the analyst's reasoning and **judgment of all factors considered** and from the impartial weighing of all of the market-derived valuation evidence."  *See* **Exhibit 1** at 478 (emphasis added).  In fact, Valuing a Business encourages analysts to explicitly weight valuation models because "it forces the analyst to present his or her thinking in clearly quantified terms."  *Id.* at 480.

Thus, Donohue was required to provide much more than a passing comment to explain why he chose one valuation model over the other.  The Report lacks any rationale for why he selected the value model that resulted in a value of $8 million to $24 million more than the other

---

[4] This statement spoke to an example where two valuation approaches yielded similar results, but a third valuation approach yielded an outlier result. Here, Donohue does not even have two valuation approaches yielding similar results. Instead, he has only two valuation approaches that are outliers relative to each other, without a third approach to even consider.

value model, let alone an explanation showing his reasoning and judgment of all relevant factors considered.

Plaintiff's remaining, cursory arguments fail as well. Plaintiffs claim that Donohue's two divergent valuations are somehow reconciled because neither of Donohue's approaches is reconciled with a purported valuation done at FCC in March 2014. (Opp. at 12). Defendants are unaware of any authority for the claim that an expert need not reconcile his two disparate opinions of value because there is a third valuation opinion that was not generated by the expert. Likewise, Plaintiff's reference to Deloitte's reconciliation of its valuation approaches in 2013 only confirms Defendants' argument—reconciliation requires either blending the different results or explaining why one approach is superior to another, neither of which was done here. (Opp. at 13).

Ultimately, nothing justifies Donohue's failure to reconcile his two conflicting ranges of values. Rather than harmonize the results, or explain why one approach was entitled to more weight than the other, Donohue arbitrarily and summarily adopted the higher range of values. The presence of an unreconciled and contradictory income valuation result renders Donohue's market valuation unreliable for purposes of Rule 702 and *Daubert*. *See In re Med Diversified, Inc.,* 334 B.R. 89, 98–99 (Bankr. E.D.N.Y. 2005) (excluding expert because he did not corroborate his market approach with an income approach); *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003) (excluding valuation expert testimony because the expert summarily relied on one method and "he makes no effort to explain how his conclusions were reached, why the conclusions have a factual basis or how his experience reliably applied."); *In re Nat'l Student Mktg. Litig.*, 598 F. Supp. 575, 581 (D.D.C. 1984) (criticizing expert for dismissing and summarily rejecting the cash flow analysis without offering any explanation).

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

### D. Plaintiff fails to rationalize Donohue's function as a conduit of hearsay for other experts to consider.

Donohue admitted in his deposition that his forensic analysis "relates to the other expert's opinions that talk about them from a legal and regulatory point of view, but it's providing that data . . . ." Donohue Tr. at 220:20-221:8 (Dkt. 251). He admits that the entire point of his "forensic accounting" was to allow other experts to rely upon the underlying documents, which are inadmissible hearsay. Plaintiff's response to the this charge is that experts are allowed to rely upon otherwise inadmissible evidence as long as experts in the particular field would reasonably rely on those kinds of fact or data in forming an opinion. But neither of the other experts who seek to rely on Donohue's analysis (James Murphy and Aaron Lacey), nor Plaintiff has shown that the facts or data at issue are reasonably relied upon in those fields.[5] *See United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987) (explaining that the party offering the expert must establish that she is relying on data that other experts in the field rely upon).

Plaintiff also suggests that everything upon which Donohue relied will be independently admissible. Not so. By way of example, Donohue relies heavily upon data from Spring Zutes, a consultant who was not an employee at FCC. Donohue Rep. n. 82, *id*. Ex. 9 n. 7, *id*. Ex. 11, *id*. Ex. 13. This data will not be admissible at trial because it is hearsay that is not subject to any exception.

Finally, Plaintiff's attempt to distinguish the case law regarding the general rule against an expert's reliance on another expert's findings is cursory and inaccurate. (Opp. at 17, n.5). Without citation, Plaintiff claims that this rule only applies to experts of the same type (e.g., one forensic accountant relying on another's findings). *Id*. But a review of the case law shows

---

[5] Defendants also address these points in the respective *Daubert* memoranda regarding Murphy and Lacey.

9

otherwise. *See, e.g., In re TMI Litig.,* 193 F.3d 613, 714–15 (3d Cir. 1999) (excluding expert for relying on experts in other areas; expert testified that he had "to leave that [conclusion] to someone else who is an expert in that area to decide"), *amended*, 199 F.3d 158 (3d Cir. 2000); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (excluding economist for relying on sales projections of another purported expert).

### III.   Conclusion

For the foregoing reasons, the Court should grant the relief sought in the Motion and exclude the opinions of James Donohue in their entirety.

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 374-7593

By:   /s/ Michael N. Kreitzer
      **MICHAEL N. KREITZER**
      (FBN 705561)
      mkreitzer@bilzin.com
      **KENNETH DUVALL**
      (FBN 121826)
      kduvall@bilzin.com
      **DAVID W. TRENCH, ESQ.**
      (FBN 0202975)
      dtrench@bilzin.com
      eservice@bilzin.com
      mavin@bilzin.com
      stapanes@bilzin.com
      *Counsel for David Knobel, Jeffrey Pierne, Neal Yawn, Dean Bartness, Siana Stewart and Cid Yousefi*

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic filing generated by CM/ECF.

      */s/ Kenneth Duvall*
      Kenneth Duvall