UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-62028-CIV-LENARD/GOODMAN

CLINGMAN & HANGER MANAGEMENT
ASSOCIATES, LLC, as Trustee,

                Plaintiff,

- against -

DAVID KNOBEL, JEFFREY PIERNE,
NEAL YAWN, DEAN BARTNESS, SIANA
STEWART, and CID YOUSEFI,

                Defendants.

## PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff Clingman & Hanger Management Associates, LLC, as trustee of a liquidating trust established by the chapter 11 plan of FCC Holdings, Inc. and its debtor subsidiaries ("Plaintiff") submits these motions in limine to preclude Defendants from submitting certain evidence at trial. This motion is brought in accordance with the Court's Scheduling Order (D.E. 53).

## BRIEF INTRODUCTION

District courts have the authority to rule on motions in limine as part of their inherent case-management authority, in order to avoid the burden and inconvenience of reserving all potential evidentiary disputes until they arise mid-trial and need to be resolved on the spot. *Luce v. United States*, 469 U.S. 38, 42 n.4 (1984). Plaintiff seeks to preclude Defendants from:

- Re-litigating the sale process by which FCC sold its assets to International Education Corporation ("IEC") in 2014, which was the subject of a federal bankruptcy court trial in March 2015; and/or

- Suggesting to the jury any alleged lack of governmental investigations or charges against the Defendants.

1

### I. DEFENDANTS SHOULD BE PRECLUDED FROM RELITIGATING ADEQUACY OF THE IEC SALE PROCESS

Defendants contend that FCC's estate failed to mitigate its damages by selling FCC's assets to IEC for inadequate consideration, supposedly due to an alleged conflict of interest concerning two of FCC's five directors who were affiliated with Greenhill Capital Partners ("Greenhill"). (D.E. 183 at 21, Eleventh Affirmative Defense).[1] While it is unclear what admissible testimony or other evidence could be offered in support of such an affirmative defense, any such evidence should be excluded under the doctrine of collateral estoppel because Defendants Knobel and Pierne, together with other former employees of FCC, *already* litigated this issue to trial and lost. *See In re Held*, 734 F.2d 628, 629 (11th Cir. 1984) (collateral estoppel has three key elements: (1) that the issue is identical to the one involved in the prior litigation; (2) that the issue was factually litigated in the prior litigation; and (3) that the determination of the issue was critical and necessary to the judgment in the prior litigation). Accordingly, no evidence adduced in support of it could be relevant, and any such evidence should be excluded.

After being stripped of its ability to draw Title IV funds, FCC sold the bulk of its schools to IEC for $2.8 million in August 2014. The IEC sale contemplated that FCC would file bankruptcy to consummate the transaction and two days later FCC commenced a chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2] In March 2015, Defendants Knobel and Pierne, along with eight other former FCC employees, filed an objection to FCC's proposed Chapter 11 plan of liquidation (the

---

[1] The other directors were appointed by Abrams Capital LLC, the 46% owner of FCC, plus Defendant Pierne.

[2] *In re FCC Holdings, Inc.*, et al, 14-11987 (Bankr. D. Del.).

"Plan") (D.E. 238-2 at 591). Knobel, Pierne and the other employees objected to the Plan's release of IEC from any fraudulent transfer (or other) liability stemming from the pre-bankruptcy sale of FCC's assets to IEC. (D.E. 238-2 at 594). They argued that FCC's assets were sold to IEC at too low a price and that FCC's Greenhill directors were conflicted because of an alleged interest in IEC:

- "To the extent that the Purchase Price conferred some value to [FCC's] creditors, that value was dwarfed by the value of the FCC Acquired Assets, which had annual revenues close to $100 million and which the Former Employees estimate had a value in excess of $50 million.") (D.E. 238-2 at 595);

- "In this case, with Greenhill Capital Partners on both sides of the transaction and the apparent paucity of other interested bidders, this Court's focus would be even sharper on the vast difference between the value received and the value transferred." (*Id*. at 596);

- "Accordingly, notwithstanding the Debtors' apparent plight prior to the Petition Date, the sale of the FCC Acquired Assets for a tiny fraction of their value cannot satisfy the standard for reasonably equivalent value." (*Id*.).

Knobel, Pierne and the other employees claimed they were creditors of FCC because of their interest in an employee deferred compensation plan whose value was impaired by the proposed liquidation plan. (D.E. 238-2 at 591).

To adjudicate the objection, the Bankruptcy Court conducted a trial with live testimony on March 18, 2015. *See* Ex. A (the transcript of that hearing "3/18/15 Tr."). The objectors cross-examined FCC's Chief Restructuring Officer (Harding) at length on the disputed facts relevant to the claim that the asset-sale process had been flawed and that assets had been sold to IEC for inadequate consideration. Ex. A. at 22-49. After hearing that testimony and the arguments of counsel, the Bankruptcy Court denied the objection. 3/18/15 Tr. at 73-74. Among other things, the Bankruptcy Court found:

> There is no question, and the evidence overwhelmingly supports, that in company was in dire straits in the summer of 2014. They were facing a severe liquidity crisis. They'd been cut off from the Department of Education funding, which if my memory serves, was approximately 90 percent of their revenue on tuition. And they were facing a loss of their ability to continue to receive funds from the DOE and the DOE was making demands as to what type of process could be run and what type of buyer would be acceptable.
>
> There was very little that is debtor could do, other than what it did. And I have no question in my mind that the IEC transaction was the best available transaction, given the facts and circumstances of the case. So, there is no fraudulent transfer action out there because there is no reasonable basis to contest that there was reasonably equivalent value presented.

(*Id*. at 73-74). The rejection of the objection was also embodied in the Bankruptcy Court's formal order also dated March 18, 2015. *See* Ex. B, Confirmation Order.[3] The Confirmation Order of the Bankruptcy Court has the force of a final judgment. *See United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (a bankruptcy court's order confirming a proposed plan is a final judgment); *In re Optical Tech., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) ("It is established law that a confirmation order satisfies the requirements of a judgment that can be given preclusive effect.") (quotations omitted).[4]

---

[3] For the specific sections of the Confirmation Order referencing the Court's March 18, 2015 ruling from the bench, *see* Confirmation Order at 1-2 (reciting the Court's March 18, 2015 hearing and reliance on the same); Specific Orders beginning at p.11: No. 2 (objection overruled); No. 4 (closing the record of the confirmation hearing); No. 5 (upholding notice); No. 6 (binding all holders of claims and interests in the Debtors); and No. 16 (approving the settlement agreement with IEC containing the releases).

[4] The fact that four of the Defendants did not join in Knobel's and Pierne's objection does not compel a different result. All Defendants chose to be represented by the same counsel in this action. All Defendants were served with notice of FCC's plan of liquidation during FCC's bankruptcy. None of the other Defendants have first-hand knowledge of the sale process to IEC or any other evidence suggesting that FCC's board of directors negotiated an artificially lower price for the IEC sale.

4

## II. DEFENDANTS SHOULD BE PRECLUDED FROM ASSERTING A PURPORTED LACK OF GOVERNMENTAL INVESTIGATIONS OR CHARGES AGAINST THEM

Defendants' summary judgment papers repeatedly tout the purported fact that no DOE investigation or enforcement action has been taken against them personally. *See*, *e.g.* D.E. 247 at 15; D.E. 282 at 8, n.2, 9 and 15. First, Defendants have offered no evidence concerning the presence or absence of any governmental investigations and obviously cannot have complete personal knowledge as to what steps the government may or may not be considering taking against them. They do not propose to call a knowledgeable government witness to testify that no investigation has been conducted and/or that no charges will be brought. Therefore, any such testimony would have no foundation.

Second, Defendants should not be able to testify about any purported lack of charges. Even prior formal regulatory charges resolved without an adjudication of liability are inadmissible because of their minimal relevance and the obvious danger of prejudice and confusion. *See*, *e.g.*, *United States v. Bailey*, 696 F.3d 794, 799-801 (9th Cir. 2012). Similarly, governmental investigations resulting in actual preliminary factfinding are properly excluded when the possibility of confusion or prejudice is present. *Walker v. Nations-Bank of Florida, N.A.*, 53 F.3d 1548, 1554-55 (11th Cir. 1995) (EEOC preliminary finding of reasonable cause to believe defendant employer had discriminated against plaintiff former employee properly excluded from evidence even though it might have been thought admissible in a bench trial).

Here, those difficulties are magnified. The jury will not know, absent substantial additional testimony not otherwise relevant, what enforcement tools are available (as against individuals rather than FCC as a defunct entity) to DOE and/or other federal agencies that might have been concerned about the debacle at FCC. The jury will likewise not know what those agencies' caseloads and enforcement priorities are, which would be highly relevant to understanding what if

5

any inference might fairly be drawn from a failure to bring charges in a particular situation. More importantly, the jury will not know whether the relevant statutes of limitations have or have not expired, such that the lack of any enforcement action to date would actually establish that the defendants are "in the clear" on that front. Thus, any inference to be drawn from the purported lack of charges or investigation that the defendants have somehow been exonerated would be completely speculative, and should be excluded under Rule 403 due to the high likelihood of confusion and prejudice even if it were thought marginally admissible under Rule 402.

Wherefore, Plaintiff Clingman & Hanger Management Associates, LLC respectfully requests that this Court enter an Order in limine as described above, together with such other and further relief as this Court deems just and proper.

## Local Rule 7.1(A) Certificate

Plaintiff certifies that it has conferred with Defendants concerning the relief requested in this motion in a good faith effort to resolve by agreement the issues raised in the motion and have been unable to do so

Respectfully submitted,

/s/ Brian S. Dervishi
Brian S. Dervishi (Bar No. 350303)
Peter A. Tappert (Bar No. 27100)
WEISSMAN & DERVISHI, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 1700
Miami, Florida 33131
(305) 347-4070
bdervishi@wdpalaw.com
ptappert@wdpalaw.com
service@wdpalaw.com

- and -

        Bijan Amini (admitted *pro hac vice*)
        Lita Beth Wright (admitted *pro hac vice*)
        Avery Samet (admitted *pro hac vice*)
        STORCH AMINI PC
        2 Grand Central Tower
        140 East 45th Street, 25th Floor
        New York, New York 10017
        (212) 490-4100
        bamini@storchamini.com
        lbwright@storchamini.com
        asamet@storchamini.com

        *Attorneys for Plaintiff Clingman &*
        *Hanger Management Associates, LLC,*
        *as Trustee*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 7, 2018, the foregoing was filed and served on the below counsel of record for Defendants via the Court's ECF system.

        /s/ Brian S. Dervishi

Michael N. Kreitzer, Esq.
Keneth Duvall, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131
kreitzer@bilzin.com
kduvall@bilzin.com
eservice@bilzin.com
mavin@bilzin.com
stapanes@bilzin.com

7